IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ERIC M. KALIK,                                    )
                                                 )
              Plaintiff,                          )      TC-MD 120183N
                                                 )
       v.                                        )
                                                 )
CLACKAMAS COUNTY ASSESSOR,                       )
                                                 )
              Defendant.                          )      **DECISION**

Plaintiff appeals the real market value (RMV) of property identified as Account

00821490 (subject property) for the 2009-10, 2010-11, and 2011-12 tax years.  A trial was held

in the Tax Courtroom in Salem, Oregon on September 17, 2012.  Plaintiff appeared and testified

on his own behalf.  Fred Dodd (Dodd), Registered Appraiser, appeared and testified on behalf of

Defendant.  Plaintiff's Exhibits 1 through 13 and Defendant's Exhibit A were received without

objection.

## I.  STATEMENT OF FACTS

The subject property is a 2,705-square foot home with a partially finished basement and

an 864-square foot detached garage.  (Def's Ex A at 4, 11.)  The subject property improvement

was built in 1978.  (*Id.* at 11.)  Dodd inspected the subject property and observed "a significant

amount of deferred maintenance."  (*Id.* at 10.)  He testified that he observed "significant dry rot"

on the exterior siding and some interior beams of the subject property, as well as water damage

to the roof.  The subject property lot is 2.55 acres.  (*Id.* at 4.)  During his inspection, Dodd

observed "a topography problem with the land."  (*Id.* at 10.)  He testified that the subject

property lot is sloped and the portion of the subject property lot sloping downhill is covered in

blackberries and trees.  Dodd testified that the subject property lacks a view.

A.      *Land real market value*

Plaintiff challenges the land real market value of the subject property.  He testified that the lot located next to the subject property, Lot 1, is 2.67 acres and sold on January 6, 2011, for $105,000.  (Ptf's Ltr at 1, Sept 5, 2012; Ptf's Ex 12-1 (the subject property is Lot 2).)  Plaintiff testified that Lot 1 was bare land at the time of sale in January 2011.  He testified that the 2011-12 roll real market value of Lot 1 was $87,959 and that Defendant made "a significant[] topography adjustment of minus 53%" to Lot 1.  (Ptf's Ltr at 1, Sept 5, 2012.)  Based on the 2011 sale and roll real market value of Lot 1, Plaintiff reasons:

> "[Lot 1] * * * is 4.7 percent larger than [the subject] property, sold for [$]105000 and has an appraised RMV at [$]87959, reducing my land by the corresponding 4.7 percent and RMV appraised value by the same 4.7 percent, one could conclude that my values should be [$]100065.00 and RMV [$]83768 respect[ively] for the 2011 tax year."

(*Id.*)

With respect to the January 2011 sale of Lot 1, Dodd responded:

> "The difference in the land values [between Lot 1 and the subject property] is due to the adjustments made to the bare land.  [Lot 1] was given a significant topography adjustment of (minus) -53%.  Additionally, since this was an unimproved lot, no OSD (on-site-development) value was added to the value of the bare land. * * * * * Without the topography adjustment, the land value for [Lot 1] would be $187,145.  Adding OSD to make both parcels comparable would yield a real market value on the bare lot of $204,350 for 2.67 acres.  This compares with the subject's land value of $198,197 for 2.55 acres.  The reduced price of the sale at $105,000 and RMV of $87,959 from the county reflect the fact that the county must take into account factors such as size, zoning, topography, power lines, rail lines, access, etc. in order to come to a realistic market value."

(Def's Ex A at 5.)  Dodd further noted that, "once a lot has been developed, the topography adjustment is removed or reduced, as is the case with the subject property.  The market has shown that once a negative to the land has been overcome, as in the lot having a home placed on it, regular market forces will apply."  (*Id.*)

Dodd stated that "[t]here are few bare acreage land sales in the area," so he relied primarily on "a land residual" analysis to determine the subject property land values for each tax year at issue. (Def's Ex A at 6.) Dodd identified one "bare land sale" on November 30, 2010; his other sales were of improved lots that sold in 2008 (as evidence for the 2009-10 tax year) and in 2010 (as evidence for the 2010-11 and 2011-12 tax years). (*Id.* at 7-8, 10.) Based on his "land residual analysis," Dodd concluded that the roll land values of the subject property were supported for each tax year at issue. (*Id.* at 10.) In rebuttal, Plaintiff provided a listing of 14.37 acres of land located 1.76 miles from the subject property for $465,000. (Ptf's Ex 13.) The price per acre for that listing is $32,359. Dodd testified in response that he only considered properties ranging in lot size from two to four and one-half acres, noting that price typically decreases as size increases.

B.     *Total real market value*

Plaintiff testified that his requested real market value for the subject property for the three tax years at issue is $225,000. He testified that, in 2009, he was going through a divorce and he received "an offer to short sell the [subject] property to the bank, which the bank refused for [$]225000." (Ptf's Ltr at 2, Sept 5, 2012.) Plaintiff stated that he was not able to provide any evidence regarding that offer because "the mortgage company that refused to accept the offer[] has also lost the correspondence showing the offer." (*Id.*) He testified that that offer is the basis for his requested real market value for each year.

Plaintiff also raised "an issue of defects to cure issues on the [subject] property." (Ptf's Ltr at 2, Sept 5, 2012 (citing Ptf's Exs 6-10).) Plaintiff provided cost estimates from several contractors for projects including "roof replacement," "siding replacement," "master bathroom deck" repair, "rear deck" repair, and "rear window replacement." (*Id.* at 3 ("Exhibit guide");

Ptf's Exs 6-10.) Plaintiff's cost estimates total $59,459.80. (Ptf's Ltr at 2, Sept 5, 2012.)

Plaintiff testified that the subject property suffers from a mold problem that will likely cost an additional $10,000 to $15,000. (*See id.*; Ptf's Ex 11.) He stated that, with respect to the mold problem, "[two] different plumbers * * * told [him] that [he] need[s] to remove a section of ceiling drywall to identify the leak and determine the total cost of the repair." (Ptf's Ex 11-1.)

For each of the three tax years at issue, Dodd determined the real market value for the subject property using the sales comparison approach. (Def's Ex A at 11-13.) Based on three comparable sales between April 2010 and July 2011, Dodd determined the 2011-12 real market value of the subject property to be $327,848. (*Id.* at 11.) Based on three comparable sales between November 2009 and May 2010, Dodd determined the 2010-11 real market value of the subject property to be $348,178. (*Id.* at 12.) Based on two comparable sales, one in February 2009 and one in September 2009, Dodd determined the 2009-10 real market value of the subject property to be $395,477. (*Id.* at 13.) Dodd stated that,

> "in order to reflect the actual market value of the subject property, both the land and the improvements should receive adjustments in value due to topography and condition. It is recommended that an adjustment of (minus) -15% in land value and a $25,000 reduction in improvement value be made for each of the tax years at issue. Additionally, the (minus) -12.5% reduction to the land value granted to the plaintiff by the Board of Property Tax Appeals * * * for 2011-12 should also be given to the land value for the 2010-11 and 2009-10 tax years."

(*Id.* at 23.) After reviewing Plaintiff's exhibits, including the "cost-to-cure estimate of $59,459," Dodd revised his value conclusions to $293,389 for the 2011-12 tax year, $313,719 for the 2010-11 tax year, and $361,018 for the 2009-10 tax year. (Def's Ltr, Sept 13, 2012.)

For the 2011-12 tax year, the real market value of the subject property determined by the board of property tax appeals was $380,000; the maximum assessed value was $348,711. (Ptf's Compl at 2.) For the 2010-11 tax year, the roll real market value of the subject property was

$462,958 and the maximum assessed value was $338,554.  (Def's Ltr, Sept 13, 2012.)  For the 2009-10 tax year, the roll real market value of the subject property was $521,544 and the maximum assessed value was $328,693.  (*Id.*)

## II.  ANALYSIS

The issue before the court is the real market value of the subject property for the 2009-10, 2010-11, and 2011-12 tax years.[1]  "Real market value is the standard used throughout the ad valorem statutes except for special assessments."  *Richardson v. Clackamas County Assessor* (*Richardson*), TC-MD No 020869D, WL 21263620 at *2 (Mar 26, 2003) (citations omitted).  Real market value is defined in ORS 308.205(1), which states:

> "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."[2]

The assessment date for the 2009-10 tax year was January 1, 2009; the assessment date for the 2010-11 tax year was January 1, 2010; and the assessment date for the 2011-12 tax years was January 1, 2011.  ORS 308.007; ORS 308.210.

The real market value of property "shall be determined by methods and procedures in accordance with rules adopted by the Department of Revenue[.]"  ORS 308.205(2).  The three approaches of value that must be considered are: (1) the cost approach; (2) the sales comparison approach; and (3) the income approach.  OAR 150-308.205-(A)(2)(a).  Although all three approaches must be considered, all three approaches may not be applicable in a given case.  *Id.*

---

[1] Plaintiff's appeal of the 2009-10 and 2010-11 tax years is allowed under ORS 305.288(1) (2009), which provides the court jurisdiction to reduce the value of property "for the current tax year or for either of the two tax years immediately preceding the current tax year, or for any or all of those tax years, if" there is an allegation of an error in value of at least 20 percent and it is attributable to property that was used "primarily as a dwelling."

[2] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2009.  The 2007 ORS are applicable for the 2009-10 tax year, but do not differ materially from the 2009 ORS and OAR provisions cited in this Decision.

Plaintiff relied on the 2011 sale of a lot located adjacent to the subject property and on a 2009 offer to purchase the subject property. Defendant relied on the sales comparison approach.

> "In utilizing the sales comparison approach only actual market transactions of property comparable to the subject, or adjusted to be comparable, will be used. All transactions utilized in the sales comparison approach must be verified to ensure they reflect arms-length market transactions."

OAR 150-308.205-(A)(2)(c). "The court looks for arm's length sale transactions of property similar in size, quality, age and location * * * in order to determine the real market value" of the subject property. *Richardson*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003).

Plaintiff has the burden of proof and must establish his case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Rev.*, 4 OTR 302, 312 (1971). "[I]t is not enough for a taxpayer to criticize a county's position. Taxpayers must provide competent evidence of the [real market value] of their property." *Poddar v. Dept. of Rev.,* 18 OTR 324, 332 (2005) (citing *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002)). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof." *Reed v. Dept. of Rev.,* 310 Or 260, 265, 798 P2d 235 (1990). "[T]he court has jurisdiction to determine the real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412.

Plaintiff challenges the 2011-12 land real market value of the subject property based on the January 6, 2011, sale of "Lot 1" for $105,000; Lot 1 is 2.67 acres and located adjacent to the subject property. Plaintiff did not offer any evidence of the land real market value of the subject property for the 2009-10 and 2010-11 tax years. The court finds that the sale of Lot 1 is not persuasive evidence of the 2011-12 land real market value of the subject property. First, as Dodd noted, one sale does not make a market. (Def's Ex A at 5.) Furthermore, Lot 1 was bare land at

the time of sale and did not include on-site developments as did the subject property as of January 1, 2011. Plaintiff argues that the subject property should receive a similar topographical adjustment as Lot 1, but offered no competent evidence in support of that request. Dodd testified that the county's "land tables," which were created based on paired sales analyses, support a larger topographical adjustment for bare land than for land with improvements. Dodd testified that, if the subject property lot was bare land, he would agree that it should receive a 53 percent topographical adjustment; instead, he used a 15 percent topographical adjustment.

The court finds that Plaintiff failed to prove by a preponderance of the evidence that the 2011-12 land real market value of the subject property is in error. The court further finds that Plaintiff failed to present any evidence that the 2009-10 or 2010-11 land real market values of the subject property are in error.

As additional evidence of the real market value of the subject property, Plaintiff testified that he received an offer to "short sell" the subject property for $225,000 in 2009. Plaintiff's testimony that the offer was for a "short sale" when he was going through a divorce suggests that the offer may be below the real market value of the subject property. It appears that, in 2009, Plaintiff was under some duress to sell the subject property and a sale for $225,000 would not have been an arm's-length market transaction. The 2009 offer to purchase the subject property for $225,000 is not reliable evidence of the real market value of the subject property for any of the tax years at issue. Plaintiff has failed to meet the burden of proof with respect to his requested reductions in real market value for the three tax years at issue.

Even though the burden has not shifted under ORS 305.427, the court has jurisdiction to determine the "real market value or correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Dodd determined the

real market value for the subject property for each of the three tax years at issue using the sales comparison approach. Dodd's comparable sales analysis is reasonable and Plaintiff offered no evidence to rebut Dodd's real market value conclusions for each tax year. Plaintiff presented evidence supporting a "cost-to-cure estimate" of $59,459, which is reflected in Dodd's final value recommendations for each tax year. Plaintiff requests that the court make an additional reduction in value of $10,000 to $15,000 for the estimated cost to cure mold problems. The court found Plaintiff to be a credible witness and does not doubt his testimony that the subject property is affected by mold problems. However, the cost to cure the mold problem is speculative and the court was not presented with any reliable evidence of that cost. Absent persuasive evidence of the cost to cure the mold problem, the court finds that no additional adjustment to the subject property real market value is supported.

The court finds that the real market value of the subject property for each of the tax years at issue was, as determined by Dodd: $293,389 for the 2011-12 tax year; $313,719 for the 2010-11 tax year; and $361,018 for the 2009-10 tax year. The 2009-10 real market value, $361,018, exceeds the 2009-10 maximum assessed value of the subject property, $328,693. For the court to order a change to the tax roll, Plaintiff must be aggrieved. ORS 305.275(1)(a). To be aggrieved, the ordered change to the tax roll must result in a property tax reduction. Dodd testified that he did not think that a reduction in the 2009-10 real market value to $361,018 would result in tax savings to Plaintiff for the 2009-10 tax year, but he was not sure. Thus, the court will not order a change to the 2009-10 tax roll unless Plaintiff is aggrieved.

### III. CONCLUSION

After carefully considering the testimony and evidence presented, the court finds that the real market values of the subject property for the 2009-10, 2010-11, and 2011-12 tax years were

those determined by Defendant's appraiser, Dodd. The court will not order a change to the 2009-10 tax roll unless Plaintiff is aggrieved. Now, therefore,

IT IS THE DECISION OF THIS COURT that the real market value of property identified as Account 00821490 was $293,389 for the 2011-12 tax year.

IT IS DECIDED that the real market value of property identified as Account 00821490 was $313,719 for the 2010-11 tax year.

IT IS DECIDED that the real market value of property identified as Account 00821490 was $361,018 for the 2009-10 tax year. The tax roll will be adjusted only if Plaintiff is aggrieved under ORS 305.275.

Dated this ____ day of November 2012.

_____
ALLISON R. BOOMER
MAGISTRATE

*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within <u>60</u> days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Allison R. Boomer on November 16, 2012. The Court filed and entered this document on November 16, 2012.*